**Opinion issued September 22, 2016.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00927-CR

———————————

**PATRICK EARL RUFFIN, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 263rd Judicial District Court**
**Harris County, Texas**
**Trial Court Case No. 1445769**

---

## MEMORANDUM OPINION

Appellant Patrick Earl Ruffin, Jr. was indicted for theft of property—a car he rented from Dollar Thrifty—valued between $1,500 and $20,000. Ruffin pleaded not guilty, but a jury found him guilty and assessed his punishment at 364 days' confinement. In one issue, Ruffin contends that, while he breached the car rental

agreement, there was no evidence that he intended to deprive the owner of property and, therefore, there was insufficient evidence to support his conviction. We affirm.

## Background

Ruffin rented a car from Dollar Thrifty on February 1, 2014. He paid $66.45 and signed a contract in which he agreed to return the car no later than February 3, 2014. Ruffin did not return the car by that date, and several weeks later, on March 27, 2014, Dollar Thrifty reported the car stolen. The Fort Lauderdale Police Department recovered the car in Dania Beach, Florida on April 9, 2014, more than two months after the agreed-upon return date.

*Ruffin Rents the Car*

At trial, Viann Rivera, a Dollar Thrifty rental agent, testified about Dollar Thrifty's rental procedures. To rent a car, a customer must provide a valid driver's license and credit or debit card to the agent, who then confirms that the name on the license matches the name on the card, and inputs the information into Dollar Thrifty's system. The agent presents the customer with a rental contract for signature, and the customer signs the contract, chooses a car, and proceeds to the exit. At the exit checkpoint, an attendant requests the customer's driver's license and rental contract to verify that the information on the driver's license matches the information on the contract. The attendant then scans a barcode on the contract and

a barcode on the car to link that contract with that car. A camera photographs the driver and the license plate, and then the gate opens allowing the customer to leave.

Rivera testified that she was the rental agent working on the evening of February 1, 2014, when Ruffin rented the car from Dollar Thrifty. Ruffin provided his Florida driver's license and Visa card, which was charged $66.45 for a three-day rental. He signed the contract, which required that he return the car to the same location no later than February 3, 2014, at 10:00 p.m. On February 2, 2014, Ruffin exchanged the original rental car for a gray 2013 Toyota Camry, but this exchange did not alter the operative provisions of the contract.

*Ruffin Fails to Return the Car*

At trial, Louis Dixon, a Dollar Thrifty fleet agent, testified about Dollar Thrifty's procedures for handling cars that are not returned by the agreed-upon date. When a car is at least five days overdue, Dollar Thrifty activates an automated phone system that calls the customer every day to remind the customer to return the car. The automated calls continue to be placed until the customer returns the car. When the car is approximately 14 days overdue, Dollar Thrifty sends a demand letter to the customer at the address listed on the customer's driver's license. The demand letter states that the vehicle is overdue and should be immediately returned, or it will be reported as stolen. After Dollar Thrifty sends the demand letter, a fleet agent compiles an overdue packet, which the agent sends to the Harris County Sherriff's

3

Office to report the car stolen. The packet includes, among other items, a vehicle description page with the car's vehicle identification number, license plate, and unit number, the demand letter, and relevant photographs and e-mails. Once the Harris County Sheriff's Office receives the packet, it treats the car as a stolen vehicle.

Dixon was the fleet agent charged with handling these procedures once Ruffin's vehicle was not returned as agreed. He testified that Dollar Thrifty activated the automated phone system on the day after the car was due to be returned, so that Ruffin began receiving phone calls reminding him to return the car beginning February 4, 2014. Ruffin neither answered nor returned any of these phone calls. Dixon also testified that Dollar Thrifty sent Ruffin a demand letter stating that the car was overdue on February 18, 2014. The letter stated that the car would be reported as stolen unless it was immediately returned, but Ruffin did not respond to the letter. Dixon also testified that he began compiling and processing the overdue packet to send to the Harris County Sheriff's Office on March 9, 2014 and that he reported the car stolen to the Sheriff's Office on March 27, 2014.

*The Discovery of the Car*

The car was recovered by the Fort Lauderdale Police Department in Dania Beach, Florida on April 9, 2014. The car had been in an accident, and its front bumper was damaged.

4

**Sufficiency of the Evidence**

In one issue, Ruffin argues that the evidence is insufficient to support his conviction because the State failed to show that he intended to deprive Dollar Thrifty of its property.

**A. Standard of Review**

An appellate court evaluates sufficiency challenges to a jury's finding of guilt under a single standard: whether, after considering all the evidence in a light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (en banc); *Gonzalez v. State*, 337 S.W.3d 473, 478 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). On appeal, the same standard of review is used for both circumstantial and direct evidence cases. *Id.* The reviewing court must defer to the trier of fact to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams v. State,* 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The reviewing court should determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the

evidence when viewed in the light most favorable to the verdict. *See Hooper,* 214 S.W.3d at 16–17. When the record supports conflicting inferences, an appellate court presumes that the fact finder resolved the conflicts in favor of the verdict and defers to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S. Ct. 2781, 2793 (1979)).

## B. Applicable Law

A person commits the offense of theft if he unlawfully appropriates property with the intent to deprive the owner of the property. TEX. PENAL CODE § 31.03(a). A person acts with intent regarding his conduct or a result of his conduct when "it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE § 6.03(a); *see also Christensen v. State*, 240 S.W.3d 25, 32 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). The intent of the accused may be inferred from his words, acts, and conduct. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (citing *Manrique v. State,* 994 S.W.2d 640, 649 (Tex. Crim. App. 1999)); *Dominguez v. State*, 125 S.W.3d 755, 761 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Furthermore, "[t]he intent to deprive may be inferred from the failure to return the property." *Amado v. State*, 983 S.W.2d 330, 333 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd).

**C. Analysis**

Ruffin asserts that his failure to return the rental car as agreed may constitute a breach of contract but does not evidence an intent to deprive Dollar Thrifty of its car. The State responds that the jury rationally convicted Ruffin because the evidence that Ruffin never attempted to return the car for two months or responded to Dollar Thrifty's demands for its return supports an inference of intent.

Several courts have held that intent to deprive may be inferred where an appellant fails to return property as agreed and provides no explanation to the owner. *See Rowland v. State*, 744 S.W.2d 610, 613 (Tex. Crim. App. 1988) (en banc) (holding that appellant's failure to return borrowed truck as promised and his failure to contact owner with an explanation was circumstantial evidence of intent to deprive); *Davis v. State*, No. 14–04–00610–CR, 2006 WL 177581, at *3 (Tex. App.—Houston [14th Dist.] Jan. 26, 2006, pet. ref'd) (mem. op.) (not designated for publication) (holding that failure to return car to dealership after weekend test drive and failure to explain or respond to numerous calls made by owner of vehicle supported inference that defendant had requisite intent to deprive); *Amado,* 983 S.W.2d at 333 (intent to deprive could be inferred where complainant gave appellant jewelry to give to his brother to fix and appellant never returned the jewelry to complainant or explained); *Nielsen v. State*, 836 S.W.2d 245, 248 (Tex. App.—Texarkana 1992, pet. ref'd) (finding sufficient evidence of intent to deprive when

accused kept rental car past return date without contacting rental company and could not be reached at provided address); *see also Jackson v. State*, No. 01-91-00458-CR, 1992 WL 105835, at *3 (Tex. App.—Houston [1st Dist.] May 21, 1992, pet. ref'd) (mem. op.) (not designated for publication) (holding rational jury could have found appellant intended to deprive owner of car where car was not returned and recovered 11 days after appellant drove it from lot and 8 days after appellant's last contact with complainant).

In *Rowland*, the appellant had been charged and found guilty of the offense of theft of an automobile after he failed to return a borrowed truck to the complainant despite agreeing to do so in three days. *Rowland*, 744 S.W.2d at 611. The appellant never contacted the complainant after taking the truck and the complainant was notified by a wrecker service a month later that his truck had been found and it had been stripped of its battery, jack, spare tire, alternator, and the complainant's tools. *Id.* In reversing the judgment of the court of appeals and affirming the trial court's judgment of conviction, the Court of Criminal Appeals held that the appellant's intent to deprive the complainant of his truck could be inferred from the fact that he did not return the truck within the three days as promised and the fact that he failed to return it at all. *Id.* at 613.

Similarly, in this case, the State presented evidence that Ruffin rented a vehicle from Dollar Thrifty and never returned it, despite agreeing to do so within

8

three days. Dollar Thrifty fleet agent Louis Dixon testified that Ruffin failed to contact Dollar Thrifty to explain why he had not returned the car and ignored numerous phone calls and a demand letter from Dollar Thrifty in which it informed Ruffin that the car would be reported as stolen unless it was immediately returned. Dixon explained that Dollar Thrifty only learned of the vehicle's whereabouts two months after it was taken because it was in an accident in Dania Beach, Florida.

Intent to deprive may be inferred from the circumstances, including "the words, acts and conduct of the accused." *Banks v. State,* 471 S.W.2d 811, 812 (Tex. Crim. App. 1971). Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have inferred that Ruffin had the requisite intent to deprive based on the circumstances and Ruffin's conduct. *Rowland*, 744 S.W.2d at 613. Accordingly, we hold that there was sufficient evidence upon which a rational trier of fact could have found Ruffin guilty of theft beyond a reasonable doubt and we overrule Ruffin's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Higley and Huddle.

Do Not Publish. TEX. R. APP. P. 47.2(b).

9